**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| JEFFREY VARBONCOEUR, an Iowa resident, LYDIA VARBONCOEUR, an Iowa resident, LUIS R. RIOS, an Iowa resident, and LIOVIGILDA R. RIOS, an Iowa resident, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>Vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     No.  3:05-CV-146<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF STATE FARM'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AS TO**
**PLAINTIFFS' CLAIMS FOR PREMIUM DAMAGES**

J. Michael Weston LI0005956
James P. Craig LI0007913
MOYER & BERGMAN, P.L.C.
2720 First Avenue NE
P. O. Box 1943
Cedar Rapids, IA  52406-1943
Telephone:  (319) 366-7331
Fax:  (319) 366-3668
E-mail: mweston@moyerbergman.com
E-mail: jcraig@moyerbergman.com

Joseph A. Cancila, Jr.
James P. Gaughan
Lawrence H. Heftman
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL 60606
Telephone (312) 258-5500
Fax (312) 258-5600
E-mail: jcancila@schiffhardin.com
E-mail: jgaughan@schiffhardin.com

*ATTORNEYS FOR STATE FARM FIRE*
*AND CASUALTY COMPANY*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    Plaintiffs' Amended Petition............................................................. 2

    B.    Plaintiffs' Amended Petition Seeks Premium Damages........................ 4

    C.    Iowa Regulatory Structure For Filed Insurance Rates ......................... 6

ARGUMENT ..................................................................................................... 8

I.     PLAINTIFFS' CLAIMS FOR PREMIUM DAMAGES ARE BARRED BY THE FILED RATE DOCTRINE.................................................................... 8

    A.    The Filed Rate Doctrine Prohibits the Retroactive Judicial Ratemaking Plaintiffs Seek ............................................................................. 9

    B.    The Filed Rate Doctrine Applies to Iowa's Regulation of Insurance Rates ........ 11

    C.    The Filed Rate Doctrine Bars Plaintiffs' Claims Here for Insurance Premium Rate Damages.................................................................... 13

CONCLUSION................................................................................................. 17

**MEMORANDUM IN SUPPORT OF STATE FARM'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS AS TO**
**PLAINTIFFS' CLAIMS FOR PREMIUM DAMAGES**

Defendant State Farm Fire and Casualty Company ("State Farm"), by its undersigned

attorneys, submits this memorandum in support of its Motion for Judgment on the Pleadings as

to Plaintiffs' claims for premium damages pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.

## INTRODUCTION

With their First Amendment to Class Action Petition ("Amended Petition"), Plaintiffs

have made manifest their pursuit of claims for refunds of what they have characterized as

"inflated" premiums or "wrongful" premiums.  Indeed, Plaintiffs go so far as to label one of their

newly-asserted classes as the "Wrongful Premium Class."  Plaintiffs challenge not only dwelling

loss payments made by State Farm under altogether new theories of underpayment but also the

premiums charged for homeowners insurance based on state-approved rates.  They contend that

the premiums State Farm charged its insureds were excessive because State Farm allegedly did

not provide the coverage promised under their policy.

Plaintiffs' premium-based claims, however, collide head-on with prevailing Eighth

Circuit authority and the filed rate doctrine.  Under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954

F.2d 485 (8th Cir. 1992) and related authority, challenges to the legality of filed rates (like

Plaintiffs' efforts here to secure refunds of premiums that were based on established state-

approved insurance rates) may only be brought to the entity vested with authority over rate

filings.  In Iowa, it is the Iowa Insurance Commissioner who has the authority to determine the

reasonableness of insurance rates.  Nevertheless, Plaintiffs request that this Court disrupt that

regulatory process both by finding that insurance premiums the named Plaintiffs paid (which

were based on rates filed with and approved by the Iowa Insurance Commissioner) were

excessive, and then by calculating the premiums owed to insureds based on the conduct alleged in the Complaint. Yet Iowa law, like the law of other alleged class states, strictly forbids insurers from deviating from the rates and premiums submitted to and approved by the Iowa Insurance Commissioner and from charging any premiums other than the premiums based on those rates. Because Plaintiffs' claims for premium damages are foreclosed as a matter of law, this Court should grant judgment to State Farm on the pleadings as to those claims.

## BACKGROUND

### A.    Plaintiffs' Amended Petition.

In their Original Petition, Plaintiffs sought to represent two subclasses of Iowans who had suffered a covered loss to their home since August 27, 1994, and who allegedly received below value initial loss payment proposals because they had prior claims histories.  (Original Petition, ¶¶ 1, 27-28).  This Court described the gist of the original case as follows: "In the Petition, Plaintiffs allege that the Defendant, State Farm Fire and Casualty Company ("State Farm"), had a practice and policy of treating insured clients materially different for purposes of loss evaluation, negotiation, and adjustment, if the insureds had previous claim history with State Farm." *Varboncoeur v. State Farm Fire and Casualty Company*, 356 F. Supp. 2d 935, 939 (Case No. 3:04-CV-70108) (S.D. Iowa 2005).[1]

The Parties undertook substantial discovery directed to Plaintiffs' allegations that State Farm supposedly treated Iowa insureds with claims histories less favorably than those without. After this discovery, Plaintiffs undertook fundamentally to change the nature of the lawsuit with their Amended Petition, by which they asserted new claims on behalf of altogether new and more

---

[1] State Farm removed Plaintiffs' Original Petition pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332.  On January 14, 2005, this Court ordered remand of the Original Petition to state court based upon a finding that State Farm had not met its burden of showing that the individual named Plaintiffs met the $75,000 amount in controversy requirement.  356 F. Supp. 2d at 952.

broadly asserted nationwide classes.[2]   The Amended Petition is based on factual allegations

entirely distinct from those asserted in Plaintiffs' Original Petition on behalf of Iowans and

stacks on top of the original lawsuit a new alleged national class action, asserted on behalf of the

following two newly alleged classes:

> **Class I:** State Farm policyholders under Form FE-5273 (replacement cost endorsement) (and/or any other policy or endorsement with substantially similar loss endorsement language) who did not have a first party dwelling structural loss covered claim in any State within the United States of America, but paid premiums (or inflated premiums) for "replacement cost" coverage that State Farm never intended and did not provide (the **"Wrongful Premium Class"**); and
>
> **Class II:** State Farm policyholders under Form FE-5273 (replacement cost endorsement) (and/or any other policy or endorsement with substantially similar loss endorsement language) who had a first party dwelling structural loss covered claim in any State within the United States of America, where State Farm divided the replacement cost and withheld a portion of the replacement cost as "Depreciation," "Payable When Incurred" or an "incurred item", and State Farm retained all or part of the "Depreciation", "Payable When Incurred" or an "incurred item" portion of the replacement costs.  Excluded from this class are policyholders asserting a first party dwelling structural loss caused by fire and/or those where State Farm finally denied and/or disputed coverage (the **"Wrongfully Withheld Replacement Cost Class"**).

(Amended Petition, ¶ 43).

While the gravaman of the Original Petition was the assertion that certain Iowa insureds

had their dwelling claims handled unfairly because of their claims history, that contention has

nothing to do with the claims asserted in Amended Petition.  Indeed, unlike Plaintiffs' allegations

---

[2]  On July 28, 2005, Plaintiffs filed their Motion to Amend and Proposed Amended Petition.  In response to Plaintiffs' Motion for Leave to File their First Amendment, State Farm removed the Action relying on prior Southern District of Iowa precedent that had held that a Motion to Amend commenced the thirty-day period for removal.  On October 13, 2005, the Honorable Robert W. Pratt ordered remand of the action based upon a finding that "Plaintiffs' Motion to Amend their petition, by itself, [was] not sufficient to confer jurisdiction" and that the Motion to Amend should first be decided in state court.  *Varboncoeur v. State Farm Fire and Casualty Company* (Case No. 3:05-CV-0095) (S.D. Iowa 2005) (Order of October 13, 2005).  This jurisdictional impediment was removed on November 16, 2005 when Judge Alpers of the Iowa District Court for Scott County granted Plaintiffs leave to file the Amended Petition, which was subsequently filed on December 5, 2005.

of supposed mistreatment of State Farm policyholders with claims histories in the Original

Petition, Plaintiffs now assert policyholders with *no* dwelling property claims during the alleged

Class Period were overcharged premiums because of alleged improper application of the

replacement cost endorsement.   And even as to those alleged class members with dwelling

claims, Plaintiffs now assert they were underpaid for reasons entirely unrelated to insureds' prior

claim histories.   Specifically, Plaintiffs now contend that when payable when incurred ("PWI")

items were not paid with State Farm's initial loss payment, State Farm allegedly violated its

obligations under a specific loss settlement endorsement.   (*See* Amended Petition, ¶¶ 6-8, 28-32

and Exh. C, Endorsement FE-5273).

**B.     Plaintiffs' Amended Petition Seeks Premium Damages.**

Plaintiffs' Amended Petition asks this Court to find that for *both* newly-proposed classes,

State Farm charged its insureds "inflated" homeowners insurance premiums because insureds

supposedly did not receive sufficient loss payments or the extent of replacement cost coverage

they allegedly were promised.   In all four counts of their Amended Petition, Plaintiffs request

premium damages based on Plaintiffs' claim that premiums were inflated because State Farm

was not observing its policy language on replacement cost benefits.   (*See* Amended Petition, ¶¶

43, 45(a) and (e), 47(g), 57(e), 58, 62, 64, 65(e), 69(e), 77, 80).

First, Plaintiffs claim that State Farm supposedly "withheld" replacement cost benefits

from insureds with dwelling claims ("Class II") and thereby allegedly underpaid loss settlements

and charged inflated premiums for replacement cost coverage not actually provided.   On behalf

of alleged Class II, Plaintiffs seek to recover both any alleged underpayment in replacement cost

benefits and whatever portion of premiums paid that may be attributed to the replacement costs

benefits promised, but allegedly not paid, in the loss settlement process.[3]

Plaintiffs also seek to recover premium damages on behalf of alleged Class I, the "Wrongful Premium Class," which is entirely composed of persons who made no dwelling claims under their State Farm policy and therefore cannot allege they did not receive the replacement cost benefits owed in respect to any particular loss.   Nonetheless, Plaintiffs assert that this alleged class was supposedly injured by paying inflated premiums for "replacement cost" coverage that "State Farm never intended and did not provide" notwithstanding the fact that by definition none of the alleged members of Class I ever made a claim for covered dwelling losses.[4]  (*See* Amended Petition, ¶ 43).   Thus, on behalf of this Class I, Plaintiffs seek premium damages for the coverage promised to these insureds but supposedly not provided even though no member of this alleged class ever made a disputed dwelling claim.   Plaintiffs ask this Court somehow to assign a value in premiums paid for replacement cost benefits supposedly withheld from insureds who never made a dwelling claim on their policy.[5]

---

[3] While State Farm strenuously denies Plaintiffs are entitled to any or either form of damages, Plaintiffs assuredly cannot legitimately claim such a double recovery, i.e. both an additional loss payment and rate damages based on the amount allegedly omitted from the initial loss payment.

[4] Plaintiffs have yet to offer a named Plaintiff capable of representing this alleged class of policyholders who made no claims.   Luis and Liovigilda Rios, the named Plaintiffs for the purported classes in the First Amendment, have made numerous prior claims in the class period and therefore do not meet the definition of alleged Class I.

[5] In their Original Petition, Plaintiffs made a half hearted request for premium damages for dwelling loss claimants as part of their unjust enrichment claim.   (*See* Original Petition, ¶ 57) (pleading unjust enrichment claim based on allegation that "homeowner's insurance premiums [] were inflated by State Farm to reflect the loss evaluation, negotiation and adjustment procedures afforded only those insureds without a State Farm claims history").   Soon after, Plaintiffs acknowledged in a paper filed with the Court that the alleged premium damages sought in the Original Petition were duplicative of their claim for loss settlement payments.   (*See* Plaintiffs' Reply to State Farm's Resistance to Motion to Remand, p. 8; Case No. 3:04-CV-70108 44,

### C.    Iowa Regulatory Structure For Filed Insurance Rates

While Plaintiffs assert a nationwide class, the named Plaintiffs' own insurance rates are governed by Iowa law.  Insurance rates in the State of Iowa are subject to a comprehensive regulatory structure embodied in Chapter 515F of the Iowa Code.  All property and casualty insurers writing policies in Iowa must "file with the commissioner ... every manual, minimum premium, class rate, rating schedule, rating plan, and every other rating rule, and every modification of any of the foregoing which it proposes to use."  Iowa Code § 515F.5(1).  All insurers' filings must "state [the] proposed effective date" and indicate "the character and extent of coverage contemplated."  *Id.*  All insurers are required to file supporting information with their rate filing which may include the experience or judgment of the insurer or rating information filed by the advisory organization on behalf of the insurer, an interpretation of any statistical data the insurer relies upon, and the experience of other insurers or other rating advisory organizations.  *See* Iowa Code § 515F.5(1)(a) – (c).  The Commissioner may require the insurer to furnish the supporting information if not provided with the rate filing.  *Id.* at § 515F.5(1)(d).  While insurance rate filings are subject to a thirty day waiting period before they become effective, the waiting period does not commence until the information is provided to the Commissioner within a reasonable time period.  *Id.*  "If the requested information is not furnished within a reasonable time period, the filing may be returned to the insurer as not filed and not available for use."  *Id.*

The Insurance Commissioner is also empowered and required to review rate filings in order to determine whether they meet the statutory requirements for rate filings.  *Id.* at §

---

Docket # 44).  By their Amended Petition, however, Plaintiffs allege a wholesale and direct challenge to State Farm's filed rates, as Plaintiffs seek premium damages in all four counts alleged on behalf of both purported nationwide classes in their Amended Petition.

515F.5(2).   Rates may not be "excessive, inadequate, or unfairly discriminatory".  *Id.* at §

515F.4(1).  The Commissioner evaluates the adequacy of filed rates based on the numerous

factors identified in the Iowa Code.  Among the specific guidelines insurers are to use when

developing their rates are the following:

> (2)  Due consideration shall be given to past and prospective loss experience
> within and outside this state; to the conflagration and catastrophe hazards; to a
> reasonable margin for profit and contingencies, to dividends, savings or
> unabsorbed premium deposits allowed or returned by insurers to their
> policyholders, or subscribers; to past and prospective expenses both within and
> outside this state; and to all other relevant factors within and outside this state;
> and in the case of fire insurance rates, consideration shall be given to the
> experience of the fire insurance business during a period of not less than the most
> recent five-year period for which experience data is available.

Iowa Code § 515F.4(2).

The Iowa Insurance Commissioner possesses broad powers to disapprove or discontinue

the use of filed rates.  *Id.* at § 515F.6(1).  If the Commissioner determines the filing does not

satisfy the statutory requirements, the Commissioner sends a written notice of disapproval to the

insurer with the basis for the filing's deficiencies.  The Commissioner also has the power to

discontinue rates previously approved, but which no longer meet the statutory requirements.  *Id.*

at § 515F.6(2).  The Commissioner "may order the discontinuance of the use" of any rate after a

hearing.  *Id.*

Of course, once filed rates are approved, insurers in Iowa may "not make or issue a

contract or policy except in accordance with the filings which have been approved and are in

effect for the insurer."  *Id.* at § 515F.5(6).  Indeed, if they were to do so, the Commissioner has

the authority to punish deviations from filed rates with substantial penalties.  *Id.* at § 515F.19.

Upon finding a violation, the Commissioner may impose fines of $10,000 for reach violation,

$25,000 if the violation is willful.  *Id.*  And if an insurer uses a rate for which the "the insurer has

failed to file the rate, supplementary rate information, underwriting rules or guides," or other

supporting information, the Commissioner may fine the insurer the maximum civil penalty for

each day the insured fails to cure its noncompliance with the requirements for filed rates. *Id.*

State Farm complies fully with state law rate filing requirements, and there has been no

allegation that State Farm has failed in any respect to meet those requirements. For example, as

mandated by Iowa law, State Farm filed with the Iowa Insurance Commissioner the rates that

were in effect at the time of the Rios Plaintiffs' loss complained of in the Amended Petition.

(Attached to State Farm's Answer to the Amended Petition as Exhibit A is an example of

excerpts from State Farm's rate filing with the Iowa Insurance Commissioner for the referenced

time period, a copy of this public record is also included as Attachment 1 to the instant Motion.)[6]

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS FOR PREMIUM DAMAGES ARE BARRED BY THE FILED RATE DOCTRINE.

Plaintiffs' claims for premium damages are barred by the filed rate doctrine. The Eighth

Circuit Court of Appeals in its seminal *H.J. Inc. v. Northwestern Bell Tel. Co. Decision,* held that

the filed rate doctrine bars claims that demand damages that "can only be measured by

comparing the difference between the rates [] originally approved and the rates [an agency]

should have approved absent the conduct of which the class complains." *H.J. Inc.*, 954 F.2d at

494. Plaintiffs' claim for premium damages seeks just that, for they request the difference

between the premiums paid under the filed rates approved by the Iowa Insurance Commissioner

and the premiums they claim *should have* been paid accounting for the allegedly insufficient loss

---

[6] State Farm's rate filings and supporting documentation are public records, *See* Iowa Code § 515F.5(d), as to which this Court may take judicial notice. *See In re K-Tel Int'l, Inc. Securities Litig.*, 300 F.3d 881, 889 (8th Cir. 2002) (taking judicial notice of public records on motion to dismiss); *see also Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (holding judicial notice of public record did not convert motion to dismiss into summary judgment motion).

settlement payments.  That is precisely the type of damages forbidden by the filed rate doctrine and the *H.J. Inc.* decision.  Plaintiffs' Complaint alleges no facts from which it may be reasonably inferred that State Farm did not charge the named Plaintiffs premiums computed using the very filed rates approved by the Iowa Insurance Commissioner, which State Farm was required by law to use.

Hence, under the filed rate doctrine, Plaintiffs' claims for premium damages are foreclosed as a matter of law and State Farm is entitled to judgment on the pleadings in respect to that category of damages under Rule 12(c).  *See, e.g., Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (a motion for judgment on the pleadings will be granted if "the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law") (internal citations omitted); *see also Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 650 (E.D. Tex. 1999) (granting Rule 12(b)(6) dismissal of filed rate claim warranted because Complaint lacked "cognizable legal theory" for recovery of premium damages); *Stevens v. Union Planters Corp.*, No. Civ. A 00-CV-1695, 2000 WL 33128256 at *3 (E.D. Pa. Aug. 22, 2000) (applying filed rate doctrine and dismissing claims for allegedly excessive mortgage premium rates under Rule 12(b)(6)).

**A.     The Filed Rate Doctrine Prohibits the Retroactive Judicial Ratemaking Plaintiffs Seek.**

Under well-established Supreme Court and Eighth Circuit authority, the filed rate doctrine precludes plaintiffs from challenging rates used by a regulated entity when those rates have been properly filed with a regulatory authority.  *AT&T Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 222 (1998); *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 582 (1981); *H.J. Inc.*, 954 F.2d at 494.  Put another way, "[t]he filed rate doctrine prohibits a party from recovering

damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." *H.J. Inc.*, 954 F.2d at 488.

The logic of the filed rate doctrine is unassailable.   Because regulated entities are required to use only those rates approved by their governing agency, the filed rate doctrine limits challenges to approved rates to administrative proceedings before those regulatory authorities. *See AT&T*, 524 U.S. at 222-23.   By restricting challenges to filed rates to the administrative realm, the filed rate doctrine thus serves the purpose of "(1) preserv[ing] the regulatory agency's authority to determine the reasonableness of rates; and (2) insur[ing] that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require." *H.J.*, 954 F.2d at 488; *see also Wegoland v. NYNEX Co.*, 27 F.3d 17, 18-20 (2d Cir. 1994) ("two companion principles lie at the core of the filed rate doctrine: first, that legislative bodies design agencies for the specific purpose of setting uniform rates, and second, that courts are not institutionally well suited to engage in retroactive rate setting" (citation omitted)).   These animating rationales apply regardless of "whether the rate in question is approved by a federal or state agency." *H.J.,* 954 F.2d at 494; *see also Taffet v. Southern Co.*, 967 F.2d 1483, 1494 (11th Cir. en banc), *cert. denied*, 506 U.S. 1021 (1992).

Courts bar litigation challenging filed rates because the state or federal agencies responsible for approving those rates, such as the Iowa Insurance Commissioner, are "deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates" when they decide to approve or disapprove proposed rates. *Allen v. State Farm Fire and Casualty Company*, 59 F. Supp. 2d 1217, 1228 (S.D. Ala. 1999) *citing*, *Wegoland*, 27 F.3d at 20.   In contrast, judicial intervention in filed rate claims would entangle courts in retroactive rate making that "would lead to discrimination in rates such

that a victorious plaintiff would end up paying less than similarly situated nonsuing customers." *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 164 (1922). Therefore, rates approved by a regulatory agency are "per se reasonable and unassailable in judicial proceedings." *Wegoland*, 27 F.3d at 18.

Indeed, the prohibitions of the filed rate doctrine are so fundamental that some courts even trace the doctrine's underpinning to the absence of standing. *See, e.g., Morales v. Attorney's Title Insurance Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997). Because insureds "have no legal right to pay anything other than the promulgated rates, they have suffered no cognizable injury by virtue of paying said rates." *Id.*; *see also Taffet*, 967 F.2d at 1490-91 (filed rate doctrine barred claims attacking allegedly excessive utility rates; customers have "no legal right" to be charged a rate other than the rate filed with state regulators, and the court could not grant relief that would "have the effect of retroactively reducing the rate for electrical power").

**B.     The Filed Rate Doctrine Applies to Iowa's Regulation of Insurance Rates.**

The Eighth Circuit identifies two requirements for application of the filed rate doctrine: (1) the regulated entity must be required to file their rates or tariffs with either a federal or a state regulatory agency, and (ii) the regulated entity is then prohibited from computing prices for services using anything other than those filed rates. *H.J. Inc.*, 954 F.2d at 488. There is no question that state insurance rate regulatory requirements meet these conditions.

While the named Plaintiffs purport to represent an alleged nationwide class in pursuit of premium damages, Iowa insurance law certainly governs the rates applicable to their own individual insurance. And, by way of illustration, it is clear that the Iowa regulatory structure for homeowners insurance rates satisfies both of the *H.J. Inc.* criteria for the applicability of the filed rated doctrine. State Farm is a regulated entity required to file its insurance rates with the Iowa

Insurance Commissioner. *See* Iowa Code § 515F.5. The Iowa Insurance Commissioner is required to "review filings ... in order to determine whether they meet the requirements" of Iowa law. *Id.* at § 515F.5(2). The Iowa Insurance Commissioner evaluates the filed rates against a rigorous statutory criteria, for rates may not be "excessive, inadequate, or unfairly discriminatory" and due consideration is to be given to past and prospective loss experience, catastrophe hazards and other factors. *See* Iowa Code § 515F.4. The Commissioner possesses the authority to disapprove or order the discontinuance of rates not meeting statutory requirements. Once a rate submitted by an insurer is approved by the Commissioner, Iowa law absolutely forbids any insurer from "mak[ing] or issu[ing] a contract or policy except in accordance with the filing which have been approved and are in effect for the insurer." Iowa Code § 515F.5(6). Deviations from the filed rate are punishable by monetary fines for each violation and suspension or discontinuance of an insurer's license. *See* Iowa Code § 515F.19.[7]

In sum, application of the filed rate doctrine here not only satisfies the common law prerequisites articulated in *H.J. Inc.*, but also furthers the policy goals of preserving regulatory authority coherently to regulate filed rates without retroactive judicial intervention.[8]

---

[7] The bar against judicial ratemaking does not leave insureds without any remedy. "An insured which is aggrieved with respect to a filing which is in effect may make written application to the commissioner for a hearing on that filing." Iowa Code § 515F.6(3).

[8] The Iowa insurance rate filing structure applicable to the named Plaintiffs' claims is illustrative of the comprehensive regulation by states generally of insurance rates. Each state, of course, has its own distinctive rate regulatory structure to which insurers are required to adhere. *Cf. Quakenbush v. Allstate Ins. Co.*, 517 U.S. 706, 733 (1996) (Kennedy, J., concurring) ("States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry."). Thus, the premium-based claims of the alleged non-resident members of the Plaintiffs' asserted classes from other states would also be precluded by the filed rate doctrine.

### C.    The Filed Rate Doctrine Bars Plaintiffs' Claims Here for Insurance Premium Rate Damages.

Plaintiffs clearly seek premium rate damages here for allegedly "inflated premiums" or "wrongful premiums" to which Plaintiffs claim State Farm was not entitled based on the coverage State Farm allegedly provided.  Plaintiffs ask this Court independently to ascribe a value to the alleged underpayment of insureds' claims and express that value in the form of premium damages, and also to award premium damages to an asserted class of insureds who have made no dwelling claims.  The filed rate doctrine precludes these claims for premium damages and Plaintiffs' request for this Court to engage in such retroactive ratemaking.

Numerous courts have held the filed rate doctrine bars claims challenging insurance premiums.[9]  For example, in *Allen v. State Farm Fire and Casualty Company*, 59 F. Supp. 2d 1217 (S.D. Ala. 1999), the plaintiffs alleged that State Farm acted wrongfully in changing the deductible applicable to hurricane coverage under State Farm's homeowner's policies in

---

[9] *See, e.g., Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 652 (E.D. Tex. 1999) (applying filed rate doctrine and granting Rule 12(b)(6) motion challenging allegedly excessive automobile insurance premiums); *Morales v. Attorneys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1428-29 (S.D. Fla. 1997) (applying filed rate doctrine to dismiss plaintiffs' claims that they were charged "'grossly overpriced title insurance premiums'"); *Kirksey v. American Bankers Ins. Co. of Fla.*, 114 F. Supp. 2d 526, 530 (S.D. Miss. 2000) (applying filed rate doctrine and granting summary judgment against plaintiff as to claim challenging allegedly excessive personal property insurance premiums that were approved by state department of insurance); *Uniforce Temporary Personnel, Inc. v. National Council on Compensation Ins. Inc.*, 892 F. Supp. 1503, 1512 (D. Fla. 1995) (citing *H.J.* and finding antitrust claim barred by filed rate doctrine because judicial revision of rates based on alleged conduct would disturb state ratemaking process); *Calico Trailer Mfg. Co. Inc. v. Insurance Co. of N. Am.*, 1995-1 Trade Cas. (CCH) P 71.022, 1994 WL 823554 at *6 (E.D. Ark. 1994) (finding allegation of inflated rates barred because an award of premium damages would disrupt "the Insurance Commissioner's rate-making decision"), *aff'd other grounds*, 155 F.3d 976 (8th Cir. 1998); *see also City of New York v. Aetna Casualty Surety Co.*, 693 N.Y.S.2d 139, 140 (S. Ct. App. Div. 1999) (filed rate doctrine barred claim for allegedly excessive automobile insurance rates); *N.C. Steel, Inc. v. National Council on Compensation Ins.*, 347 N.C. 627 (1998) (barring claim attacking allegedly excessive rates for residual market workers compensation insurance); *Lupton v. Blue Cross & Blue Shield of N. Carolina*, 533 S.E.2d 270, 273 (N.C. App. 2000) (filed rate doctrine barred claim for insurer's alleged maintenance of excessive reserves in violation of state law).

Alabama. State Farm moved to dismiss the complaint arguing plaintiffs' claims were barred by the filed rate doctrine, among other things. State Farm had filed its rates and endorsement regarding hurricane coverage with the Alabama Insurance Commissioner, who had accepted State Farm's filings. The court agreed and dismissed the plaintiffs' claims due to the filed rate doctrine. *Allen*, 59 F. Supp. 2d at 1229 (dismissing Complaint based on filed rate doctrine because "[a]llowing [] plaintiffs to circumvent the established statutory process for approval of insurance rates by allowing the Court to become enmeshed in the rate-making process would undermine Alabama's current regulatory regime").

District Court precedent in the Eighth Circuit is in accord that i) the filed rate doctrine precludes insurance premium rate challenges, and ii) the doctrine should be applied to the insurance industry to promote uniform rates and avoid judicial rate making. For example, in *Saunders v. State Farm Fire & Casualty Company*, No. 97-1140-CV-W-FJG (W.D. Mo. March 26, 2004) and (W.D. Mo. March 31, 2005) (Orders granting motion to dismiss premium rate-based claim and denying of motion to reconsider) (Gaitan, J.) (copies attached as Attachments 2 and 3 to the instant Motion) plaintiffs alleged that State Farm had charged insureds differing homeowner's insurance rates based on the racial makeup of their neighborhood and sought damages for allegedly inflated premiums. The Court agreed with State Farm's Motion to Dismiss holding that "[b]ecause State Farm filed all of its rates with the Department of Insurance, these were the only legal rates that State Farm could charge and plaintiffs were not entitled to any other rates." *Id.; see also McClain v. Shelter General Ins. Co.*, No. 97-1139-CV-W-FJG, 2005 WL 1009574 at *4 (W.D. Mo. March 31, 2005) (court rejected Plaintiffs' premium damages claims where the Court would have been forced to "determine what [premiums] the plaintiffs should have been charged initially" absent the complained of conduct and where to

14

permit "an award of damages to the customer-plaintiff would, effectively, change the rate paid by the customer to one below the filed rate paid by other customers"), *citing Bryan v. BellSouth Comm. Inc.*, 377 F.3d 424, 429-30 (4th Cir. 2004) *cert. denied* 125 S. Ct. 1398 (2005).

Plaintiffs' claims for premium damages are similarly barred by the filed rate doctrine. Plaintiffs seek damages for allegedly "inflated premiums" even though Iowa law requires insurers to charge insureds premiums based on the filed rate Plaintiffs claim to be inflated. Thus, Plaintiffs' request for premium rate damages are the very rate decisions that the filed rate doctrine leaves to regulatory authorities, not the courts. The filed rate doctrine bars claims that demand damages that "can only be measured by comparing the difference between the rates [] originally approved and the rates [an agency] should have approved absent the conduct of which the class complains." *H.J., Inc.*, 954 F.2d at 494. Plaintiffs ask for exactly this. Plaintiffs ask the Court to quantify the difference between the premiums paid and the premiums that should have been charged, taking into account allegedly insufficient loss payments or coverage.

Moreover, Plaintiffs' requested relief would embroil this Court in the task of adjusting insurance rates after the fact based on alleged improprieties in the handling of insurance claims. These are precisely the type of ad hoc judicial rate adjustments barred by the filed rate doctrine. *See, e.g., Uniforce Temporary Personnel v. Nat'l Council on Compensation Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla. 1995) (rejecting premium damages sought because "it would be necessary to measure the difference between the properly approved [] insurance rates paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity" and that "undertaking is not within the province of the courts but should reside with the respective state regulators with authority over rate-setting"). The filed rate doctrine bars such premium rate claims in order to avoid usurping the regulatory authority of

15

state agencies and disrupting the insurance rates approved by the regulatory authorities.  Because

State Farm's filed rates are the only legal rates State Farm may use and base premiums upon, its

use of those rates cannot properly be attacked as a breach of conduct, tortious conduct, or any

other sort of wrongdoing outside of an administrative rate proceeding.  *See, e.g., Keogh*, 260

U.S. at 162-3 (finding no cause of action could lie for damages based on filed rates); *see also*

*Calico Trailer Mfg. Co. Inc. v. Insurance Co. of N. Am.*, 1995-1 Trade Cas. (CCH) P 71.022,

1994 WL 823554 at *6 (E.D. Ark. 1994) (dismissing conspiracy claim for inflated rates because

such "a damage concept [] falls squarely within the filed rate doctrine" and any decision by the

Court to award damages "would disturb the Insurance Commissioner's rate-making decision),

*aff'd other grounds*, 155 F.3d 976 (8th Cir. 1998).  Accordingly, this Court should grant State

Farm judgment on the pleadings as to Plaintiffs' claims for premium damages.

## CONCLUSION

The filed rate doctrine bars Plaintiffs' claims for premium damages.  Accordingly, State Farm respectfully requests that this Court grant its Rule 12(c) Motion for Judgment on the Pleadings and award State Farm judgment in its favor as to Plaintiffs' claims for premium damages.

Dated:  December 27, 2005

Respectfully submitted,

By:

J. Michael Weston  LI0005956
James P. Craig  LI0007913
MOYER & BERGMAN, P.L.C.
2720 First Avenue NE
P. O. Box 1943
Cedar Rapids, IA  52406-1943
Telephone:  (319) 366-7331
Fax:  (319) 366-3668
E-mail: mweston@moyerbergman.com
E-mail: jcraig@moyerbergman.com

Joseph A. Cancila, Jr.
James P. Gaughan
Lawrence H. Heftman
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606
Telephone:  (312) 258-5500
Fax:  (312) 258-5600

*ATTORNEYS FOR DEFENDANT*
*STATE FARM FIRE AND CASUALTY*
*COMPANY*

17

Copies to:

Joseph R. Gunderson, Esq.
Jason Walke, Esq.
Gunderson, Sharp & Walke, L.L.P.
317 - 6th Avenue, Suite 600
Des Moines, IA  50309
Telephone:  (515) 288-0219
Direct Dial:  (515) 288-9205
Facsimile:   (515) 288-0328
E-mail:  jgunderson@midwest-law.com
ATTORNEYS FOR PLAINTIFFS

Jeffrey Bittner, Esq.
Jeffrey Bittner Law, P.C.
125 Kirkwood Blvd.
Davenport, IA  52803
Telephone:  (563) 323-7007
Facsimile:   (563) 323-8335
E-mail:  jbittner@kirkwoodlaw.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of December, 2005, I electronically filed the foregoing document(s) with the clerk of court, using the ECF system; and have mailed the document(s) to the following counsel via regular U. S. mail:

Joseph R. Gunderson, Esq.
Jason Walke, Esq.
Gunderson, Sharp & Walke, L.L.P.
317 - 6th Avenue, Suite 600
Des Moines, IA  50309

Jeffrey Bittner, Esq.
Jeffrey Bittner Law, P.C.
125 Kirkwood Blvd.
Davenport, IA  52803

_____

J. Michael Weston